UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 08CV 80666 KMM/LRJ

IN RE: LETTER OF REQUEST FROM
BELGIUM FOR ASSISTANCE IN THE
CRIMINAL MATTER OF GIANFRERO GROUP.
ET. AL.

_____/

FILED by _____ D.C.

**JUN 1 8 2008**

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

## APPLICATION FOR ORDER PURSUANT TO
## TITLE 28, UNITED STATES CODE, SECTION 1782

The United States of America petitions this Court for an Order pursuant to 28 U.S.C. § 1782 and the Court's inherent authority appointing Assistant United States Attorney John C. McMillan, Jr., (or a substitute or successor subsequently designated by the Office of the United States Attorney) as Commissioner to collect evidence from witnesses within the jurisdiction of this Court and to take such other action as is required to execute the above-captioned and attached request. In support thereof, the government states as follows:

### I.   MEMORANDUM OF LAW IN SUPPORT OF APPLICATION FOR ORDER

This memorandum is submitted in support of the application of the United States for an Order requiring persons within the jurisdiction of this Court to provide testimony and evidence requested by Belgium (hereinafter the Requesting Authority) for use in a criminal proceeding in Belgium and appointing a Commissioner to collect it. The application is based upon the letter of request, attached hereto as Government's Exhibit A.

As set forth in the Request, the Requesting Authority has commenced a criminal investigation in the Requesting State. Specifically, the Court of First Instance in Antwerp, Belgium, is investigating the Giafrero Group International NV (formerly NV Brutt), Valibo Invest (formerly Brutt BVBA) and Unit Securities S.A., for forgery and the use of forged documents, in violation of

Articles 192, 196, 197, 213, 214, 489 and 505(1)-(4), of the Criminal Code of Belgium. A summary of the relevant facts, offenses, the need for, and the relevance and intended uses of, the assistance requested in view of facts and offenses set forth is set forth in Government's Exhibit A, which is incorporated herein by reference.

This Court, pursuant to its statutory and inherent authority, may (1) order that persons within this district shall provide evidence requested for use in a proceeding in a foreign country, (2) appoint a person to gather such evidence, and (3) establish the procedure pursuant to which the evidence requested shall be produced.

1. Authority to grant a foreign request for assistance

Title 28, United States Code, § 1782, provides in pertinent part that:

The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign . . . tribunal, including criminal investigations conducted before formal accusation. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign . . . tribunal or upon the application of any interested person . . . .

Section 1782 was enacted:

. . . to improve United States judicial procedures for . . . obtaining evidence in the United States in connection with proceedings before foreign and international tribunals . . . .

Sen. Rep. No. 1580, 88th Cong., 2d Sess. 1 (1964), reprinted in 1964 U.S. Code Cong. & Admin. News 3782 [hereinafter 1964 U.S.C.C.A.N.]. By enacting § 1782, Congress reaffirmed the inherent authority of district courts to grant foreign judicial assistance. In re Request for Assistance from

Ministry of Legal Affairs of Trinidad and Tobago, 648 F. Supp. 464 (S.D. Fla. 1986), aff'd, 848 F.2d 1151, 1154 (11th Cir. 1988), cert. denied, 488 U.S. 1005 (1989). More significantly, its enactment reflected Congress' desire to increase the power of district courts to respond to foreign requests for judicial assistance. See, e.g., In re Letters Rogatory from the Tokyo District, Tokyo, Japan, 539 F.2d 1216, 1218-1219 (9th Cir. 1976). In sum, § 1782 is a Congressional invitation to district courts to affirmatively act to execute foreign requests for judicial assistance.

  a.  Source of the foreign request

  Foreign requests for judicial assistance may be made by a foreign court or tribunal, including an investigating magistrate or juge d'instruction. In re Letter of Request from the Government of France, 139 F.R.D. 588, 590-591 (S.D.N.Y. 1991); In re Letter of Request for Judicial Assistance from the Tribunal Civil de Port-Au-Prince, Republic of Haiti, 669 F. Supp. 403, 405-406 (S.D. Fla. 1987). Foreign requests may also be made by "any interested person," such as a foreign legal affairs minister or public prosecutor. In re Letters Rogatory from the Tokyo District Prosecutor's Office, Tokyo, Japan, 16 F.3d 1016, 1019 (9th Cir. 1994); In re Letter of Request from the Crown Prosecution Service of the United Kingdom, 870 F.2d 686, 690 (D.C. Cir. 1989); In re Request for Assistance from Ministry of Legal Affairs of Trinidad and Tobago, 648 F. Supp. 464, 466 (S.D. Fla. 1986), aff'd, 848 F.2d 1151, 1154 (11th Cir. 1988), cert. denied, 488 U.S. 1005 (1989).

  b.  Purpose of the foreign request

  Foreign requests for judicial assistance must be for the purpose of securing evidence "for use in a proceeding in a foreign . . . tribunal, including criminal investigations conducted before formal accusation." 28 U.S.C. § 1782. Congress added the language "including criminal investigations conducted before formal accusation" in 1996 to ensure that district courts were empowered to provide assistance at any stage of the investigation, irrespective of the proximity to formal charges.

See <u>United States v. Sealed 1, Letter of Request for Legal Assistance from the Deputy Prosecutor</u>

<u>General of the Russian Federation</u>, 235 F.3d 1200, 1204-1205 (9th Cir. 2000).[1]

      c.    <u>Discoverability in the requesting state of the assistance requested</u>

District courts need not determine whether foreign requests for assistance seek materials that

are discoverable under the laws of requesting nations. As the Supreme Court stated in <u>Intel</u>

<u>Corporation v. Advanced Micro Devices, Inc.</u>, 542 U.S. 241, 124 S.Ct. 2466, 2480 (2004):

> Beyond shielding material safeguarded by an applicable privilege, however, nothing
> in the text of § 1782 limits a district court's production-order authority to materials
> that could be discoverable in the foreign jurisdiction if the materials were located
> there. "If Congress had intended to impose such a sweeping restriction on the district
> court's discretion, at a time when it was enacting liberalizing amendments to the
> statute, it would have included statutory language to that effect." [Citations omitted.]

In evaluating requests from foreign courts, district courts can rely on each foreign court to be "the

arbiter of what is discoverable under its procedural rules." <u>In re Letter Rogatory from the First Court</u>

<u>of First Instance in Civil Matters, Caracas, Venezuela</u>, 42 F.3d 308, 310-311 (5th Cir. 1995). In

evaluating requests from sources other than foreign courts, concerns regarding the discoverability

of requested material under foreign law are "simply one factor that a district judge may consider" in

determining whether to provide assistance. <u>Euromepa S.A. v. R. Esmerian, Inc.</u>, 51 F.3d 1095, 1098

(2d Cir. 1995).

      d.    <u>Discoverability in the requested state of the assistance requested</u>

---

[1]  Before the amendment, circuits differed on the appropriate point prior to a pending
proceeding at which district courts should render assistance. See, e.g., <u>In re Request for</u>
<u>International Judicial Assistance (Letter Rogatory) for the Federative Republic of Brazil</u>, 936
F.2d 702, 707 (2d Cir. 1991) (proceeding must be "imminent"); <u>United Kingdom</u>, 870 F.2d at
691 (proceeding must be "reasonably contemplated"). Subsequent to the amendment, in <u>Intel</u>
<u>Corporation v. Advanced Micro Devices, Inc.</u>, 542 U.S. 241, 124 S.Ct. 2466, 2480 (2004), the
Supreme Court resolved any remaining issue: "we reject the view . . . that § 1782 comes into play
only when adjudicative proceedings are "pending" or "imminent." [Citation omitted.] Instead,
we hold that § 1782 requires only that a dispositive ruling [by a "tribunal"] . . . be within
reasonable contemplation." [Citations omitted.]

District courts need not determine whether foreign requests for assistance seek materials that would be discoverable in analogous proceedings in the United States. As the Supreme Court stated in Intel Corporation v. Advanced Micro Devices, Inc., 542 U.S. 241, 124 S.Ct. 2466, 2482 (2004):

> We also reject Intel's suggestion that a § 1782 applicant must show that United States law would allow discovery in domestic litigation analogous to the foreign proceeding. [Citation to Intel brief and text omitted.] Section 1782 is a provision for assistance to tribunals abroad. It does not direct United States courts to engage in comparative analysis to determine whether analogous proceedings exist here.

e. <u>Admissibility in the requesting state of the assistance requested</u>

A district court generally should not decide whether the requested evidence will be admissible in a foreign court. In re Request for Assistance from Ministry of Legal Affairs of Trinidad and Tobago, 848 F.2d 1151, 1156 (11th Cir. 1988), cert. denied, 488 U.S. 1005 (1989); In re Request for Judicial Assistance from the Seoul District Criminal Court, Seoul, Korea, 555 F.2d 720, 723 (9th Cir. 1977); In re Letters of Request from the Supreme Court of Hong Kong, 821 F.Supp. 204, 211 (S.D.N.Y. 1993); In re Letter of Request from the Government of France, 139 F.R.D. 588, 592 (S.D.N.Y. 1991)("Absent a showing that a requesting country is manipulating section 1782 in a manner offensive to concepts of fundamental due process and fairness, United States Courts are not to embark upon the task of deciding the propriety of the ultimate uses of evidence gathered under the Section."). Nonetheless, a district court should be alert that the procedures it establishes for collecting the evidence requested are consistent with its use in a judicial proceeding in the requesting state. See In re Letter of Request from the Crown Prosecution Service of the United Kingdom, 870 F.2d 686, 692-693 (D.C. Cir. 1989).

2. <u>Authority to appoint a commissioner</u>

Section 1782 further provides in pertinent part that:

> The district court . . . may direct that the testimony or statement [of a person who resides or is found within the district] be given, or the document or other thing be produced, before a person appointed by the court.

A district court customarily appoints or "commissions" a person ("commissioner") to collect evidence on behalf of the court and authorizes the commissioner to submit the evidence collected to the requesting foreign court or authority. "Since the power of the commissioner comes from his appointment, any person who seems appropriate to the court may be appointed commissioner." In re Letters of Request from the Supreme Court of Hong Kong, 821 F. Supp. 204, 211 (S.D.N.Y. 1993). With requests from foreign law enforcement authorities for assistance in criminal matters, a district court typically appoints an Assistant United States Attorney as commissioner. However, a district court also may commission a foreign authority together with (or in lieu of) an Assistant United States Attorney. See, e.g., In re Letter of Request from the Supreme Court of Hong Kong, 138 F.R.D. 27, 29 (S.D.N.Y. 1991). See also In re Letter of Request for Judicial Assistance from the Tribunal Civil de Port-Au-Prince, Republic of Haiti, 669 F. Supp. 403, 408 (S.D. Fla. 1987).

Application to a district court for appointment of a commissioner to execute a foreign request for judicial assistance is handled ex parte. In re Letter of Request from the Crown Prosecution Service of the United Kingdom, 870 F.2d 686, 688 (D.C. Cir. 1989); In re Letters Rogatory from the Tokyo District, Tokyo, Japan, 539 F.2d 1216, 1219 (9th Cir. 1976).

3. Authority to establish the evidence-collecting procedure  Section 1782 further provides in pertinent part that:

> To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

A district court empowers a commissioner to collect evidence using a procedure prescribed by the

court. A district court has "complete discretion in prescribing the procedure to be followed." In re Letter of Request from the Crown Prosecution Service of the United Kingdom, 870 F.2d 686, 693 (D.C. Cir. 1989), citing 1964 U.S.C.C.A.N. at 3789. When a district court's order fails to specify a procedure by which a commissioner is to collect the evidence, the Federal Rules of Civil Procedure apply. In re Letters Rogatory from the Tokyo District Prosecutor's Office, Tokyo, Japan, 16 F.3d 1016, 1019 (9th Cir. 1994); In re Letter of Request from the Supreme Court of Hong Kong, 138 F.R.D. 27, 31 (S.D.N.Y. 1991). However, as § 1782 makes clear, when a district court does specify a procedure other than one in accordance with the Federal Rules of Civil Procedure, the alternative procedure shall apply. 28 U.S.C. § 1782(a).

a.  Commissioner's subpoena

If a district court so orders, a commissioner may use a commissioner's subpoena, to obtain the requested evidence. See In re: Commissioner's Subpoenas, 325 F.3d 1287, 1291 (2d Cir. 1993) (incorporating in pertinent part a district court's order directing use of commissioner's subpoenas); United States v. Erato, 2 F.3d 11, 13-14 (2d Cir. 1993) (same). The commissioner's subpoena is a creation of neither the Federal Rules of Criminal Procedure nor the Federal Rules of Civil Procedure, but is an order of a district court for production of evidence in accordance with § 1782. See 28 U.S.C. 1651; White v. National Football League, et. al, 41 F.3d 402, 409 (8th Cir. 1994), cert. denied, 515 U.S. 1137 (1995) (a court may issue whatever process it deems necessary to facilitate disposition of a matter before it); Rule 57(b), Fed.R.Crim.P. Upon authorization by a district court, a commissioner may issue such commissioner's subpoenas as are necessary to execute a request, including subpoenas compelling production of evidence located outside the district by a person or entity present in the district.

b.    Notice of evidence taking

If a district court so orders, a commissioner may collect evidence in accordance with procedures -- including those involving notice -- requested by the requesting court or authority. In the absence of a specific request to provide notice, a district court can assume that a requesting court or authority has provided such notice as the foreign law requires, or that foreign law does not require notice and the requesting court or authority does not consider notice to be necessary or useful. In sum, if a requesting state has not requested notice, no notice need be provided. Accordingly, to the extent that a request does not ask for specific notice procedures, a district court should authorize a commissioner to take evidence without notice to any party other than the recipient of the commissioner's subpoena.

c.    Right to Financial Privacy Act

The Right to Financial Privacy Act, 12 U.S.C. §§ 3401 et seq., does not apply to execution of foreign legal assistance requests. Young v. U.S. Dept. of Justice, 882 F.2d 633, 639 (2d Cir. 1989), cert. denied, 493 U.S. 1072 (1990); In re Letter of Request for Judicial Assistance from the Tribunal Civil de Port-Au-Prince, Republic of Haiti, 669 F. Supp. 403, 407 (S.D. Fla. 1987); In re Letters of Request from the Supreme Court of Hong Kong, 821 F.Supp. 204, 211 (S.D.N.Y. 1993). Consequently, to the extent that execution of a request entails production of bank or financial records, notice provisions of the Act do not apply. (Note that the Act itself applies only to accounts maintained in a person's name and not to corporate, perhaps even partnership, accounts. United States v. Daccarett, 6 F.3d 37, 50-52 (2d Cir. 1993).)

4.    The Present Request

Congress intended that the United States set an example to other nations by making judicial assistance generously available. See, e.g., In re Request for Assistance from Ministry of Legal

Affairs of Trinidad and Tobago, 848 F.2d 1151, 1153-1154 (11th Cir. 1988), cert. denied, 488 U.S. 1005 (1989). Based upon the facts set forth therein, this Request is of the type that Congress contemplated when it enacted § 1782 and expanded the authority of district courts to assist foreign tribunals. Accordingly, the government asks this Court, in the interests of comity, to issue the attached order under § 1782 granting assistance for a proceeding in the Requesting State, appointing the undersigned Assistant United States Attorney as commissioner, and authorizing the undersigned commissioners to take the actions necessary, including the issuance of commissioner's subpoenas, to collect the evidence requested and to adopt such procedures in the receipt of the evidence as are consistent with the intended use thereof in the Requesting State.

Respectfully submitted,

R. ALEXANDER ACOSTA
UNITED STATES ATTORNEY

BY: _____

JOHN C. McMILLAN, JR.
ASSISTANT UNITED STATES ATTORNEY
Admin. No. A5500228
500 S. Australian Ave., Suite 400
West Palm Beach, FL 33401
Office: (561) 820-8711
FAX: (561) 820-8777
Email: John.McMillan@usdoj.gov

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. _____

IN RE: LETTER OF REQUEST FROM
BELGIUM FOR ASSISTANCE IN THE
CRIMINAL MATTER OF GIANFRERO  GROUP
_____/

## **ORDER**

**THIS CAUSE** came before the Court upon application of the United States, and the Court

having read and considered the letter of request dated September 13, 2007, from the Belgian Court

of First Instance in Antwerp, Belgium, seeking evidence for use in a judicial proceeding in Belgium,

and it appearing that the requirements of 28 U.S.C. § 1782 have been satisfied, it is hereby

**ORDERED AND ADJUDGED** that  pursuant to the authority conferred by 28 U.S.C. §

1782 and this Court's inherent authority, that Assistant United States Attorney John C. McMillan (or

a substitute or successor subsequently designated by the Office of the United States Attorney) is

appointed as Commissioner (hereinafter referred to as the "Commissioner") of this Court and hereby

directed to take such steps as are necessary to collect the evidence requested.  In doing so, the

Commissioner is not required to follow the Federal Rules of Civil Procedure and the following rules

shall govern:

1.     The Commissioner may issue commissioner's subpoenas to be served on persons

(natural and artificial) within the jurisdiction of this Court ordering them or their representatives to

appear and to testify and produce evidence located within the United States;

2.     The Commissioner shall provide notice with respect to the collection of evidence to

those persons identified in the request as parties to whom notice should be given (and no notice to

any other person shall be required);

3.      The Commissioner shall adopt procedures to collect the evidence requested consistent with its use as evidence in a proceeding before a tribunal in Belgium, which procedures may be specified in the request or provided by the requesting court or authority or by a representative of Belgium;

4.      The Commissioner, in collecting the evidence requested, may be accompanied by persons whose presence or participation is authorized by the Commissioner, including, without limitation, special agents of the Federal Bureau of Investigation  and/or representatives of the Belgian government, to specifically include (but not limited to):

   a.      Chief Inspector Paul Lermytte
           Belgian Federal Judicial Police
           Department of Economic/Financial Investigations

   b.      Chief Inspector Dirk Lauwers
           Belgian Federal Judicial Police
           Department of Economic/Financial Investigations

who, as authorized  or directed by the Commissioner, may direct questions to any witness;

5.      Any person from whom the Commissioner seeks to collect evidence may oppose the giving of evidence, or the circumstances thereof, by motion timely filed with this Court, a copy of which shall be provided contemporaneously to the Commissioner;

6.      The Commissioner may seek such further orders of this Court as may be necessary to execute this request, including:

   a.      orders to show cause why persons served with commissioner's subpoenas
           who fail to produce evidence should not be held in contempt, and

   b.      protective orders to regulate the use of the evidence collected;

7.      The Commissioner shall certify and submit the evidence collected to the Office of

International Affairs, Criminal Division, United States Department of Justice, or as otherwise directed by that office for transmission to the requesting court or authority; and

8.    The Commissioner may provide copies of the evidence collected to persons identified in the request as parties to whom such copies should be given (and to no other persons).

**IT IS FURTHER ORDERED** that the Application and this Order shall be maintained under seal unless and until this Court orders otherwise. Notwithstanding this Order's filing and maintenance under seal, the Commissioner may disclose copies of this Order as necessary to accomplish the purposes of the request.

**DATED** this _____ day of June, 2008, in Chambers, at West Palm Beach, Florida.

_____
UNITED STATES DISTRICT JUDGE

cc:    AUSA John C. McMillan (WPB)

3

COURT OF FIRST INSTANCE
IN
<u>ANTWERPEN</u>
CHAMBERS OF
INVESTIGATING MAGISTRATE
<u>F. CAMBERLAIN</u>
Notes nr.: 75.98.375/04
My reference nr.: 2005/072
Your reference nr. /
Tel.: (03) 257.88.39

Antwerp, 13 September 2007

The Department of Justice
Office of International
Affairs
Mrs. Lynn Holiday
Washington-DC
USA
<u>Or any other competent authority</u>

## <u>ROGATORY COMMISSION</u>

At the request of the DA, dated 28 April 2005, my office was enthrusted with an investigation concerning:

The criminally liable
1. GIANFRERO GROUP INTERNATIONAL NV (GGI NV), established 29/3/2002 under the denomination NV BRUTT, Vestingstraat 49 letter box 38 in 2018 Antwerp
2. VALIBO INVEST NV (formerly BRUTT BVBA), Vestingstraat 49 letter box 38 in 2018 Anvers
3. UNIT SECURITIES S.A., Boulevard Joseph II, L 1840 Luxemburg (Grandduchy of Luxemburg)

For:

A. Forge and use of forged documents (articles 193, 196, 197, 213, 214 of the Criminal Code)
B. Violation of article 489ter of the Criminal Code
C. Violation of article 505, paragraph 1, 2°, 3° and 4° of the Criminal Code

Taking into account the Treaty on mutual legal assistance in criminal matters between the Kingdom of Belgium and the United States of America



A 0 6 3 / 2 0 7 - B

THE FACTS

1. History.

Since the beginning of BRUTT NV (later NV GIANFRERO GROUP INTERNATIONAL NV), SCHELLEKENS Anton (born in Antwerp on 11/23/1965, housing in Zandhoven, Bogaereweg 14),
VERSTRAETE Frederik (born in Ghent on 8/7/1972, housing in Lokeren, Weverslaan 1) and VERMEIRSCH Ginette (born in Lokeren on 3/27/1960, housing in Lokeren, Guillaume Fierensstraat 3)
Have started with the sales of jewellery, more specifically the house brand 'CASA GI'.

From the establishment onwards some irregularities have taken place already, especially concerning the "input in kind" in the books by BVBA BRUTT (an older, existing company, owned by SCHELLEKENS Anton). The role of the revisor and a bank employee in this case are currently under investigation.

After a disagreement took place between the directors SCHELLEKENS Anton and VERSTRAETE Frederik, they decide to both go their own way, and shortly after that GIANFRERO GROUP INTERNATIONAL NV goes bankrupt. The investigation of the bankruptcy by, amongst others, a designated expert, showed that:

- Bookkeeping was, probably intentionnally, kept unclearly, incompletely and unveraciously.
- The Luxemburg company SA UNIT SECURITIES (established on 09/05/1994 with a capital of 40.000,- US$ by PAN EUROPEAN VENTURES S.A. and INTERNATIONALE NEDERLANDEN TRUST S.A. (Grand duchy of Luxemburg) – both established at the same address as UNIT SECURITIES S.A.) have subscribed a capital expenditure at NV BRUTT for an amount of 495.787,00 € in cash on 06/052002. On 01/22/2004 the General Assembly decided that UNIT SECURITIES S.A. would tender its resignation, effective 05/20/2003. Only 18 months after the capital expenditure, UNIT SECURITIES S.A. is dissolved.
- GIANFRERO GROUP INTERNATIONAL NV gives an advance, on behalf of RUKARIM INVEST NV, for real estate in the diamond district in Antwerp, Vestingstraat 42.
- RUKARIM INVEST NV was established 01/21/2003 by Islam KATATAEV (born in Grozny on 4/11/1973, housing in France, Paris, Rue George Bernard Shaw 3bis) and Frederik VERSTRAETE. The authorized capital (600.000,- €) was deposited by MAVECO GRUPP (Estonia). A few weeks later an amount of 593.312,92 € was deposited back to MAVECO GRUPP. This payment is mentioned by the bank as possible money laundring, and the money is blocked, by order of the Belgian judicial authorities. KHUSSAINOV Ruslambek (born on 8/7/1972, housing in France, Paris, Rue George Bernard Shaw 3bis) is administrator of RUKARIM INVEST NV as well.
- In a attempt to liquidate GIANFRERO GROUP INTERNATIONAL NV, instead of filing for bankruptcy 'what should have been done according to Belgian law) 100% of the jewels delivered to CASA GI US are attributed a 100% depreciation (for an amount of 545.688,99 €) and even a 200% for jewellery delivered to THE INDEPENDENT SOURCE (for a value of 128.819,81 €). To say the least, this indicates GIANFRERO GROUP INTERNATIONAL NV had a certain amount of control vis-à-vis the two American companies. Compensation in the books of GIANFRERO GROUP

INTERNATIONAL NV, and between the two American clients could indicate links between both. Apparently, there would have been a discussion about the quality of the goods delivered.

- Amongst others, we found a payment of 62.068,18 US$ dated 07/10/2003 in the books of GIANFRERO GROUP INTERNATIONAL NV mentioning: comissioned by 2KA Ventures Inc. ( Ron HATFIELD's company, according to VERSTRAETE).

- From an e-mail from CASA GI US it would appear: 'I (n.est. Alana HATFIELD) know for sure that Ron gave Frederik a lot of product from her and he at least took back about 150.000 to 200.000 worth of product into Belgium from America of what I know.' This same Ron would have mentioned to American customs that VERSTRAETE imported marihuana when travelling to the US.

- GIANFRERO GROUP INTERNATIONAL NV established the BVBA JEWEL TEC ou JEWEL TECH LLC according to Armenian law, in Jerevan (Armenia). However, this participation is nowhere to be found in the books. It would appear from an invoice by BVBA L. BUYSCHAERT & CO (jewel production machines supplier) dated01/22/2203, that these machines, for a value of 168.110,- € (total monthly instalments), were delivered to GIANFRERO GROUP INTERNATIONAL NV. Apparently, this machine would have been 'lent ' to JEWEL TECH LLC, with the intention to 'manufacture less expensive jewels' for GIANFRERO GROUP INTERNATIONAL NV.

- Raw material was delivered as well, for a value of 60.421,23 €, however JEWEL TECH has only delivered for a value of 8.160,- USD (=6.975,60 €). No rent is paid, and there was only one delivery of jewels. Karo BEGUIAN is managing director and receives a monthly salary of 500,- €. It cannot be excluded that two deposits of 5.000,- US$ to JEWEL TECH relate to the establishment .

- It is probable that a number of jewels hav e been purloined from the bankruptcy, and have been brought into the new company CASA GI INTERNATIONAL NV, where Ginette VERMEIRSCH, is selling, apparently without VERSTRAETE and SCHELLEKENS, the jewels of the 'Casa Gi' line. T o do so, she uses the same clients and suppliers as GIANFRERO GROUP INTERNATIONAL NV, who in the meantime ha gone bankrupt as well as the patent (goodwill) she received in person without any collateral.


<u>REQUEST</u>

I hereby politely request, and offering my services to you as well, to proceed to the following acts of investigations:


    1.  <u>Gather information at the Chamber of Commerce:</u>
With the request to retrieve the correct addresses of:
CASA GI US PO BOX 810998 Boca Raton Florida US
En 551 NW 77 , The Street, Suite 200, Boca Raton, Florida 33487
2KA VENTURES INC (is believed to be established at the same address and to be Ron HATFIELD's company)


    2.  <u>Request to priorly identify and localize the people below :</u>
- Alana, Marcella HATFIELD, born no 03/01/1951 in GUYANA ( see CASA GI US), telephone number 0015614496271, fax number 0015614934859, address: 226 Nort West

Street, Boca Raton, Florida 33487, holder of passport number 044547712, delivered by te
Miami authorities on 01/26/1996, valid until 01/25/2006
- Ron HATFIELD (see CAS GI US) same address
- The people entrusted with the end responsibility of 2KA VENTURES INC., if this is an
  other person than the aformentioned


3.  Judicial antecedents
Kindly communicate the judicial antecedents of the people and companies mentioned
hereafter, as well as the ongoing investigations.

SCHELLEKENS Anton
Born in Antwerp, on 11/23/1965
Housing in 2240 Zandhoven, Bogaereweg 14

VERSTRAETE Frederik
Born in Ghent, on 08/07/1972
Housing in 9160 Lokeren, Weverslaan 1

BEGUIAN, Karo
Born in Erevan (Armenia) on 12/23/1964
Housing in 1082 Berchem-Saint-Agathe, Katteputstraat 40/b21
(administrator in GGI and JEWEL TECH LLC)

VERMEIRSCH, Ginette
Born in  Lokeren, on03/27/1960
Housing in 9160 Lokeren, Guillaume Fierensstraat 3

ROSSI Jacopo
Born in San Donna di Piave (Italy), on04/20/1972, no other data available
(delegated administrator of UNIT SECURITIES S.A. luxemburg company)

KHATATAEV, Islam
Born in Grozny (Russia), on04/11/1973
Housing in Rue George Bernard Shaw  3bis, Paris, France (Russian citizenship)

KHUSSAINOV, Ruslambek, Abduchakhtovitch
Born on 08/07/1972 (Russian citizenship)
Residing at the address of KHATATAEV Islam, housing in France, Paris, Rue George
Bernard Shaw 3 bis

GIANFRERO GROUP INTERNATIONAL NV (GGI NV) – established on 03/29/2002
under the denomination NV BRUTT, Vestingstraat 49 letter box 38 in 2018 Antwerp

UNIT SECURITIES S.A. (Grand duchy of Luxemburg) L.1840 Luxemburg, 8, Boulevard
Joseph II

CASA GI INTERNATIONAL NV, Lange Herentalsestraat 62B70 in 2018 Antwerp

RUKARIM INVEST NV, Rijfstraat 3 in 2018 Antwerp

VALIBO INVEST NV, Vestingstraat 49 letterbox 38 in 2018 Antwerp (formerly BRUTT BVBA)

MAVECO GROUP (Estonia) or TOO MAVECO GRUPP (Talin - Estonia)
SILVER MOON Company (administrator UNIT SECURITIES S.A.), 122 Via Espana, Bank of Boston Building 8° floor, Panama (represented by S. Van Den Broeck)

JEWEL TECH LLC Tigran Metsh, 1 Nrbantsk n° 62, Erevan 375018, Armenia

CASA GI US, PO BOX 810998 Boca Raton - Florida, US (Alana HATFIELD)

2KA VENTURES INC, PO BOX 810998 Boca Raton - Florida , US (Ron HATFIELD)

CASA GI US, 551 NW 77, The Street, suite 200, Boca Raton, Florida 33487

THE INDEPENDENT SOURCE, Two Harbour Place, Portsmouth NH 03801, US (SCHNEIDER P. and KELLY Chris)

ACCA JEWELRY Ltd (Hongkong) (probably priorly GI GROUP Ltd)


4. Interviews:

We kindly request that you proceed to the interview of
- Alana HATFIELD (see CASA GI US)
- Ron HATFIELD (see CASA GI US)
- The people enthrusted with the end responsibility of CASA GI US if this is an other person than the aformentioned
- The people enthrusted with the end responsibility of 2KA VENTURES INC if this is an other person than the aformentioned


In order to:
- to find about their commercial relationships with the people and companies mentioned above (point 2)
to find out if there are still moneys and/or jewels (stock), property of the bankrupt company GIANFRERO GROUP INTERNATIONAL BV with these people or companies. According to the court appointed accountant, analysis of the books learns that there should be considerable amounts of money/jewels belonging tot GIANFRERO GROUP INTERNATIONAL NV present in the US.
To encumber those moneys/jewels with sequestration, in order to join them to the assets of the estate of the bankrupt GIANFRERO GROUP INTERNATIONAL BV
According the court appointed accountant it was established that there were 2 depreciations booked for the full amount to the assets, 128 819,31€ of THE INDEPENDENT SOURCE. No motive was given for this step and no valid documents were transmitted.
To find out which payments were made to whom, in case the jewels have indeed been bought.

5. Checking accounts:

Requesting to proceed to the verification and check-up of the books of CASA HI US and 2KA VENTURES INC., in order to find out :

-   what were the relationships beteen the US companies and the aforementioned companies

To verify as well :

a)  if there were order slips, invoices, proofs of payment credit notes etc. of the aformentioned companies (item 2) found regarding the jewel trade
b)  if there is correspondence to be found with the aforementioned people and companies (item 2), that could shed some light on the large amoubnt of jewels that mightstill be with these US companies
c)  what was the reason for the 100% 'depreciations'
d)  if they are still trading with the new company CASA GI INTERNATIONAL NV in Antwerp, or with one of the other, aforementioned people or companies
e)  if there are proofs of payment or reimbursement of jewels to be found
f)  if there are still jewels to be found tht are the property of GIANFRERO GROUP INTERNATIONAL NV (e.g. jewels that had been given in commission)

To impound these documents (or copies thereof) and to transmit them.


We request that the interviews and the check-ups of the books be executed in the presence of

**Paul LERMYTTE**
Chief Inspector  with special assignment
Federal Judicial Police, Noordersingel 25-27, Anvers 2140, Department
Ecofin/financial investigations
Tel.: 0032 3 670 75 10
Fax: 00 32 3 670 73 53
paul.lermytte.7303@police.be

**Dirk LAUWERS**
Chief Inspector  with special assignment
Federal Judicial Police, Noordersingel 25-27, Anvers 2140, Department
Ecofin/financial investigations
Tel.: 0032 3 670 75 09
Fax: 00 32 3 670 73 53
ecofin. fedpolantwerpen@skynet.be


We wish to thank you in advance for your consentment with this rogatory commission and the execution of the thoings we asked for.

Practical details can be discussed direzctly with the aforementioned police officers

Yours truly,

F. CAMBERLAIN
Investigationg magistrate
[Signature illegible]

Enclosure: extract of the Belgian Criminal Code

[Seal illegible]

For sworn translation Dutch to English, the sworn translator Anne-Marie Dewachter
Voor eensluidende vertaling Nederlands Engels, de beëdigd vertaler Anne-Marie Dewachter

Gezien door ons
I. MOYERSOEN          Voorzitter
van de Rechtbank van Eerste
Aanleg, zitting houdende te
Antwerpen, voor echtverklaring
van hierboven staande handtekening
van

Antwerpen,

03 OKT. 2007

*Art 193.*
Forgery in writing or in telegrams, with malicious intent or with the intention to cause damage, is punished according to the following articles.

*Art 196*
With incarceration will be punished the other people who commit forgery in authentic and public writings and all people who commit forgery in commercial or bank writings or in private writings.
Be it by false signatures, or by reproducing or falsifying the writings or signatures, be it by falsely drawing up agreements, settlements, contracts or liberation of debts, or by inserting them in the deeds afterwards, or by addition or falsification of stipulations, statements or facts which these deeds had as purpose to incorporate or to find.

*Art 197*
In all cases mentioned in this paragraph, he who uses the forged deed or the forged document, will be punished as if he were the author of the forgery.

*Art 213.*
The application of the punishments against those who use coins, stocks, proof of interest —or dividend, notes, seals, stamps, brands, telegrams and writings which have been reproduced, falsely drawn up or forged, only takes place as far as these people use the forged objects with malicious intent or with the intention to cause damage.

*Art 214.*
In cases described in the four preceding chapters and for which no explicit fine has been determined, a fine of 26 franks to 2000 franks is pronounced.

*Art 489 ter*
Will be punished with imprisonment of one month to five years and a pecuniary fine of one hundred francs tot five hundred thousand franks
The persons meant in article 489 who, with criminal intent or with the intention to cause harm, have:
1° concealed or embezzled a part of the active property
2° who have had the books or documents, meant in Chapter I of the Law dated 17 July 1975 on the bookkeeping and the annual accounts of the companies, disappear completely or partially, attempt to that offence will be punished with imprisonment of one month to three years and with a pecuniary fine of one hundred francs to five hundred thousand franks.
They who were guilty of those offences or of attempt to those offences can moreover be condemned to the destitution of rights according to article 33

505. Will be punished with a prison sentence of fifteen days to five years and a fine of twenty-six franks to one hundred thousand franks, or with only one of these sentences
1° Those who fence stolen, embezzled or received through crime or misdemeanour objects or a part of them

2° Those who have bought, received against payment or free of charge, have taken in possession, safekeeping or under supervision the objects meant in article 42, 3 °, although they know or should have known the origin thereof.

3 ° Those who have converted or transmitted the objects meant in article 42, 3° with the intention to conceal or blur their illicit origin, or to help a person, involved in a crime from which these objects evolve, to escape the judicial consequences of his actions.

4° Those who have concealed or shrouded the nature, origin, place of finding, alienation, displacement or property of the objects meant in article 42,3°, although they knew, or should have known the origin thereof.

The crimes meant in 3° and 4° remain existent, even when they were committed by the author or co-author of, the accomplice respectively to the crime from which the objects, meant in article 42,3° evolve.

Objects meant in 1°,2°,3° and 4° of this article constitute the object of the crimes covered by these dispositions , in the sense of article 42,1° and they will be confiscated, even if they are not the property of the condemned party, however, without these confiscation prejudicing the rights of third parties on the goods that may constitute the object of the confiscation.

**Attempt** to one of the crimes meant in 2°,3° and 4° of this article will be punished with a prison sentence of eight days to three years and with a fine of twenty-six franks to fifty thousand franks or with only one of these sentences.

People punished according to these dispositions, can furthermore be condemned to disfranchisement according to article 33

For sworn translation Dutch to English, the sworn translator Anne-Marie Dewachter
Voor eensluidende vertaling Nederlands Engels, de beëdigd vertaler Anne-Marie Dewachter

Gezien door ons
I. MOYERSOEN      Voorzitter
van de Rechtbank van Eerste
Aanleg, zitting houdende te
Antwerpen, voor echtverklaring
van hierboven staande handtekening
van
Antwerpen,

0 3 OKT. 2007

RECHTBANK  VAN  EERSTE  AANLEG
TE
**ANTWERPEN**
KABINET
ONDERZOEKSRECHTER
**F.CAMBERLAIN**
Notitienummer : 75.98.375/04
Mijn referentie : 2005/072
Uw referentie  :   /
Tel.   (03) 257.88.39

Antwerpen,13 september 2007

Aan Department of Justice
Office of International Affairs
Mrs.Lynn Holiday

Washington DC

USA

Of elke andere bevoegde
Gerechtelijke autoriteit

## AMBTELIJKE OPDRACHT

Bij vordering van de Procureur des Konings dd 28 april 2005 werd mijn ambt gelast met een onderzoek lastens :

De strafrechtelijke verantwoordelijken van
1. GIANFRERO GROUP INTERNATIONAL NV, (GGI NV) opgericht op 29/3/2002 onder de benaming NV BRUTT, Vestingstraat 49 bus 38 te 2018 Antwerpen
2. VALIBO INVEST NV, (voorheen BRUTT BVBA) Vestingstraat 49 bus 38 te 2018 Antwerpen
3. UNIT SECURITIES S.A., Boulevard Joseph II, L.1840 Luxembourg (Groothertogdom Luxemburg)

hoofdens :
A. valsheid in geschriften en gebruik van valse stukken (artikelen 193,196,197,213,214 van het Strafwetboek)
B. inbreuken op artikel 489ter van het Strafwetboek
C. inbreuken op artikel 505, lid 1, 2°, 3° en 4° van het Strafwetboek

Gelet op het verdrag voor Wederzijdse rechtshulp in strafzaken tussen het Koninkrijk België en de Verenigde Staten van Amerika.

A063/2007 -B

<u>DE FEITEN</u>

<u>1. Historiek.</u>

Vanaf de start van BRUTT NV (later NV GIANFRERO GROUP INTERNATIONAL NV) startten SCHELLEKENS Anton (geboren te Antwerpen op 23/11/1965, wonende te Zandhoven, Bogaereweg 14), VERSTRAETE Frederik (geboren te Gent op 7/8/1972, wonende te Lokeren, Weverslaan 1) en VERMEIRSCH Ginette (geboren te Lokeren op 27/3/1960, wonende te Lokeren, Guillaume Fierensstraat 3) met de verkoop van juwelen, voornamelijk van het huismerk 'CASA GI'.

Reeds van bij de oprichting gebeurden een aantal onregelmatigheden, voornamelijk voor wat betreft de boekhoudkundige 'inbreng in natura' vanuit de BVBA BRUTT (een oudere en bestaande vennootschap van SCHELLEKENS Anton). De rol van de bedrijfsrevisor en een hogere bankbediende worden in dit verband hiermede onderzocht.

Na onenigheid tussen de bestuurders SCHELLEKENS Anton en VERSTRAETE Frederik besluiten ze elk hun eigen weg te gaan, en kort daarna gaat GIANFRERO GROUP INTERNATIONAL NV failliet. Uit het faillissementsonderzoek dat o.m. mede door een aangestelde gerechtsdeskundige werd onderzocht, blijkt o.m.:

- De boekhoudingen waren, vermoedelijk opzettelijk, onduidelijk, onvolledig en niet waarheidsgetrouw bijgehouden.

- De Luxemburgse SA UNIT SECURITIES (op 5/09/1994 opgericht met een kapitaal van 40.000,- US$ door PAN EUROPEAN VENTURES S.A. en INTERNATIONALE NEDERLANDEN TRUST S.A (Groothertogdom Luxemburg). – beide gevestigd op hetzelfde adres als UNIT SECUTIRTIES S.A.-) schreef in op een kapitaalsverhoging bij NV BRUTT ten waarde van 495.787,00 € in speciën op 05/06/2002. Op 22/01/2004 beslist de algemene vergadering dat UNIT SECURITIES S.A. haar ontslag indiende als bestuurder, met ingang van 20/05/2003. Reeds anderhalf jaar na de kapitaalsverhoging, wordt UNIT SECURITIES S.A. ontbonden.

- GIANFRERO GROUP INTERNATIONAL NV doet een aanbetaling, namens RUKARIM INVEST NV, voor een onroerend goed in het diamantkwartier te Antwerpen, Vestingstraat 42.

- RUKARIM INVEST NV werd opgericht op 21/01/2003 door Islam KATATAEV (geboren te Grozny op 11/4/1973, wonende te Frankrijk, Parijs, George Bernard Shaw Straart 3bis) en Frederik VERSTRAETE. Het maatschappelijk kapitaal (600.000,- €) werd gestort door MAVECO GRUPP (Estland). Enkele weken later wordt een bedrag van 593.312,92 € teruggestort aan MAVECO GRUPP. Deze betaling wordt door de bank gemeld als verdacht van witwas, en het geld wordt geblokkeerd in opdracht van de Belgische gerechtelijke autoriteiten. Ook KHUSSAINOV Ruslambek (geboren op 7/8/1972, verblijvende te Frankrijk, Parijs, Goerge Bernard Shawstraat 3bis) is bestuurder RUKARIM INVEST NV.

- In een poging om GIANFRERO GROUP INTERNATIONAL NV nog te vereffenen, in plaats van het faillissement aan te vragen (wat cfr de Belgische jurisdictie had moeten gebeuren), worden 100% waardevermindering toegekend aan de juwelen die aan CASA GI US geleverd waren (ter waarde van 545.688,99 €), en zelfs 200% voor de juwelen die aan THE INDEPENDENT SOURCE geleverd werden (ter waarde van 128.819,81 €). Hieruit blijkt minstens een zekere controle vanuit GIANFRERO GROUP INTERNATIONAL NV ten opzichte van de beide Amerikaanse vennootschappen. De compensatie in de boekhouding van GIANFRERO GROUP INTERNATIONAL NV, en tussen beide Amerikaanse klanten wijst mogelijk op bindingen tussen beiden. Er zou een discussie geweest zijn over de kwaliteit van de geleverde goederen.

- Er werd onder meer een betaling aangetroffen dd. 10/07/2003 van 62.068,18 US$ in de boekhouding van GIANFRERO GROUP INTERNATIONAL NV met de vermelding :in opdracht van 2KA Ventures Inc. (de vennootschap van Ron HATFIELD, volgens VERSTRAETE).

- Uit een e-brief van CASA GI US blijk: 'I (Nvdr: Alana HATFIELD) *know for sure that Ron gave Frederik a lot of product from her and he at least took back about 150.000 to 200.000 worth of product into Belgium from America of what I know.*' Diezelfde 'Ron' zou aan de Amerikaanse Douane gemeld hebben dat VERSTRAETE marihuana meebracht bij zijn reizen naar de VS.

- GIANFRERO GROUP INTERNATIONAL NV richtte de BVBA naar Armeens recht JEWEL TEC of JEWEL TECH LLC in Jerevan (Armenië) op. Deze deelneming wordt echter niet vermeld in de boekhouding. Uit een factuur van BVBA L.BUYSCHAERT & CO (leverancier van machines om juwelen te produceren) van 22/01/2003 blijkt, dat deze machines, ter waarde van 168.110,- € (opgetelde afbetalingen mensualiteiten) geleverd werd aan GIANFRERO GROUP INTERNATIONAL NV. Deze machine zou 'uitgeleend' zijn aan JEWEL TECH LLC, met de bedoeling om 'goedkoper juwelen te maken voor GIANFRERO GROUP INTERNATIONAL NV.

- Er werden ook grondstoffen geleverd t.w.v. 60.421,23 €, terwijl JEWEL TECH slechts voor 8.160,- USD (=6.975,60 €) leverde. Er wordt geen huur betaald, en er is maar één levering van juwelen geweest. Karo BEGUIAN is zaakvoerder, en ontvangt een loon van 500,- € per maand. Het is niet uit te sluiten dat twee stortingen van 5.000,- US$ aan JEWEL TECH te maken hebben met de oprichting.

- Mogelijk werden een aantal juwelen ontvreemd uit het faillissement, en ondergebracht in de nieuwe vennootschap CASA GI INTERNATIONAL NV, waarin Ginette VERMEIRSCH, blijkbaar zonder VERSTRAETE en SCHELLEKENS, de juwelen van de 'Casa Gi'-lijn verkocht. Zij maakt daarvoor gebruik van dezelfde klanten en leveranciers als GIANFRERO GROUP INTERNATIONAL NV, die dus intussen failliet is alsook van het patent (goodwill) dat zij persoonlijk ontving zonder tegenprestatie.

### VERZOEK

Met beleefd verzoek, en steeds tot wederdienst bereid, om over te gaan tot volgende onderzoeksdaden :

1. Inwinnen informatie bij de Kamer van Koophandel:

    Met verzoek de juiste adressen te achterhalen van:
    - CASA GI US PO BOX 810998 Boca Raton – Florida (US)
    - En 551 NW 77, The Street, suite 200, Boca Raton, Florida 33487
    - 2KA VENTURES INC. (zou op hetzelfde adres gevestigd zijn en de vennootschap van Ron HATFIELD zijn)

2. Met verzoek volgende personen voorafgaand te identificeren en te lokaliseren:

    - Alana, Marcella HATFIELD, geboren op 01.03.1951 te Guyana (zie CASA GI US) telefoonnummer 0015614496271, faxnummer 0015614834859, adres: 226 NorthWest Street, Boca Raton, Florida 33487, houdster van paspoort met nummer 044547712 uitgereikt door de autoriteiten van Miami op 26.01.1996 geldig tot 25.01.2006;

- 'Ron' HATFIELD (zie CASA GI US), zelfde adres
- De (eind)verantwoordelijke(n) van CASA GI US, indien andere dan hierboven vermeld;
- De (eind)verantwoordelijke(n) van 2KA VENTURES INC, indien andere dan hierboven vermeld.

3. Gerechtelijke antecedenten:

Met verzoek de gerechtelijke antecedenten mee te delen van de hierna vermelde personen en rechtspersonen, alsmede de lopende onderzoeken

SCHELLEKENS, Anton
Geboren te Antwerpen op 23/11/1965
Wonende te 2240 Zandhoven, Bogaereweg 14

VERSTRAETE Frederik
Geboren te Gent op 07/08/1972
Wonende te 9160 Lokeren, Weverslaan 1

BEGUIAN, Karo
Geboren te Yerevan (Armenië) op 23/12/1964
Wonende te 1082 Sint-Agatha-Berchem, Katteputstraat 40/b21
(bestuurder in GGI en JEWEL TECH LLC)

VERMEIRSCH, Ginette
Geboren te Lokeren op 27/03/1960
Wonende te 9160 Lokeren, Guillaume Fierensstraat 3

ROSSI Jacopo
°San Donna di Piave (Italië) 20/04/1972, geen verdere gegevens gekend
(afgevaardigd bestuurder van de Luxemburgse UNIT SECURITIES S.A.)

KHATATAEV, Islam
°Grozny (Rusland) op 11/04/1973
Wonende te George Bernard Shaw straat 3bis in Parijs, Frankrijk ( van Russische Nationaliteit)

KHUSSAINOV, Ruslambek, Abduchakhtovitch
Geboren op 07/08/1972 (van Russische nationaliteit)
Verblijvende op het adres van KHATATAEV Islam, wonende te Frankrijk, Parijs , George Bernard Shawstraat 3 bis.

GIANFRERO GROUP INTERNATIONAL NV (GGI NV) – opgericht op 29/03/2002 onder de benaming NV BRUTT, Vestingstraat 49 bus 38 te 2018 Antwerpen;

UNIT SECURITIES S.A. (Groothertogdom Luxemburg) L.1840 Luxembourg, 8, Boulevard Joseph II

CASA GI INTERNATIONAL NV, Lange Herentalsestraat 62B70 te 2018 Antwerpen

RUKARIM INVEST NV, Rijfstraat 3 te 2018 Antwerpen;

VALIBO INVEST NV,Vestingstraat 49 bus 38 te 2018 Antwerpen (voorheen BRUTT BVBA);

MAVECO GROUP (Estland) of TOO MAVECO GRUPP (Talin – Estland)

SILVER MOON Company (beheerder UNIT SECURITIES S.A.), 122 Via Espana, Bank of Boston Building 8° verdieping,  Panama (vertegenwoordigd door S. Van Den Broeck)

JEWEL TECH LLC Tigran Metsh, 1 Nrbantsk n° 62, Erevan 375018, Armenië.

CASA GI US, PO BOX 810998 Boca Raton – Florida, US (Alana HATFIELD)

2KA VENTURES INC, PO BOX 810998 Boca Raton – Florida , US (Ron HATFIELD)

CASA GI US, 551 NW 77, The Street, suite 200, Boca Raton, Florida 33487;

THE INDEPENDENT SOURCE, Two Harbour Place, Portsmouth NH 03801, USA (SCHNEIDER P. en KELLY Chris)

ACCA JEWELRY Ltd (Hongkong) (mogelijk voorheen GI GROUP Ltd)

4.  Verhoren:
      Met verzoek over te gaan tot verhoor van:
        o  Alana HATFIELD (zie CASA GI US)
        o  Ron HAFTIELD (zie CASA GI US)
        o  De (eind)verantwoordelijke(n) van CASA GI US, indien andere dan hierboven vermeld;
        o  De (eind)verantwoordelijke(n) van 2KA VENTURES INC, indien andere dan hierboven vermeld

Teneinde:
-  Te achterhalen wat hun handelsrelaties zijn met de personen en vennootschappen hierboven vermeld (punt 2).
-  Te achterhalen of er zich nog gelden en/of juwelen (stock), eigendom van de gefailleerde vennootschap GIANFRERO GROUP INTERNATIONAL NV bij deze personen of vennootschappen bevinden.  Conform de gerechtsdeskundige accountant zouden er na analyse van de boekhouding van GIANFRERO GROUP INTERNATIONAL NV nog aanzienlijke gelden en/of voorraden in de Verenigde Staten van Amerika moeten aanwezig zijn.
-  Deze gelden/juwelen met beslag bezwaren, teneinde voeging bij het actief van de boedel van de NV GIANFRERO GROUP INTERNATIONAL NV in faling.
-  Conform gerechtsdeskundige accountant werd onder meer een waardevermindering ten belope van € 545.688,99 (100%) geregistreerd omdat de kwaliteitsnormen van de geleverde goederen werden betwist. Terzake werden echter geen bewijskrachtige documenten overgemaakt.
-  Te achterhalen welke betalingen er aan wie gebeurd zijn, zo de juwelen wel degelijk aangekocht zijn.

5.  Controle boekhouding:
      Met verzoek over te gaan tot nazicht van de boekhouding van CASA GI US en  van 2KA VENTURES INC, teneinde te achterhalen:

-  welke relaties er bestonden tussen de VS-vennootschappen  en de vennootschappen en de personen hierboven vermeld (punt 2)

Tevens na te gaan:
        a) of er bestelbons, facturen, betalingsbewijzen, creditnota's en dergelijke kunnen aangetroffen worden van de hierboven genoemde vennootschappen (punt 2) inzake de handel in juwelen;

**b)** of er briefwisseling kan aangetroffen worden met de hierboven vermelde vennootschappen of personen (punt 2), die meer licht kunnen werpen op een grote hoeveelheid juwelen die zich nog bij deze US-vennootschappen zou kunnen bevinden.;

**c)** wat de reden was van de boekhoudkundige 'waardeverminderingen' van 100%;

**d)** of zij nog handel drijven met de nieuwe vennootschap CASA GI INTERNATIONAL NV in Antwerpen, of met één van de andere, eerder genoemde personen of vennootschappen;

**e)** of er bewijzen van betalingen of teruggaven van juwelen kunnen aangetroffen worden;

**f)** of er nog juwelen kunnen aangetroffen worden die eigendom zijn van GIANFRERO GROUP INTERNATIONAL NV (bijvoorbeeld die in concessie zijn gegeven);

Deze stukken (of kopie ervan) en goederen in beslag te nemen en over te maken.

Met verzoek de verhoren en controles boekhouding <u>te laten verrichten in het bijzijn van</u>:

> **Paul LERMYTTE**
> Hoofdinspecteur van Politie met B.S.
> Federale Gerechtelijke Politie, Noordersingel 25-27, Antwerpen 2140, Afdeling Ecofin/Financiële Recherche
> Tel: 0032 3 670 75 10
> Fax: 0032 3 670 73 53
> <u>paul.lermytte.7303@police.be</u>

> **Dirk LAUWERS**
> Hoofdinspecteur van Politie met B.S.
> Federale Gerechtelijke Politie, Noordersingel 25-27, Antwerpen 2140, Afdeling Ecofin/Financiële Recherche
> Tel: 0032 3 670 75 09
> Fax: 0032 3 670 73 53
> <u>ecofin.fedpolantwerpen@skynet.be</u>

Wij danken U bij voorbaat voor Uw toestemming tot rechtshulpverzoek en tot uitvoering van het gevraagde.

De praktische uitwerking van deze internationale samenwerking kan rechtstreeks met hoger genoemde politiemensen besproken worden.

Met Hoogachting,

F. CAMBERLAIN
Onderzoeksrechter

Hierbijgevoegd: uittreksel uit het Belgisch Strafwetboek

## *Toepasselijke Wetgeving*

*artikel 193 :*
Valsheid in [geschriften, in informatica of in telegrammen], met bedrieglijk opzet of met het
oogmerk om te schaden, wordt gestraft overeenkomstig de volgende artikelen.

*artikel 196 :*
Met [opsluiting van vijf jaar tot tien jaar] worden gestraft de andere personen die in
authentieke en openbare geschriften valsheid plegen en alle personen die in handels- of
bankgeschriften of in private geschriften valsheid plegen.
hetzij door valse handtekeningen;
hetzij door namaking of vervalsing van geschriften of handtekeningen;
hetzij door overeenkomsten, beschikkingen, verbintenissen of schuldbevrijdingen valselijk op
te maken of achteraf in de akten in te voegen;
hetzij door toevoeging of vervalsing van bedingen, verklaringen of feiten die deze akten ten
doel hadden op te nemen of vast te stellen.

*artikel 197 :*
In alle gevallen in deze afdeling vermeld, wordt hij die gebruik maakt van de valse akte of van
het valse stuk, gestraft alsof hij de dader van de valsheid was.

*artikel 213 :*
De toepassing van de straffen, gesteld tegen hen die gebruik maken van de munten, effecten,
rente- of dividendbewijzen, biljetten, zegels, stempels, merken, telegrammen en geschriften
welke nagemaakt, valselijk opgemaakt of vervalst zijn, heeft slechts plaats voor zover die
personen van de valse zaak gebruik maken met bedrieglijk opzet of met het oogmerk om te
schaden.

*artikel 214 :*
In de gevallen, bij de vier vorige hoofdstukken omschreven en waarvoor geen geldboete in het
bijzonder bepaald is, wordt een geldboete van zesentwintig [euro] tot tweeduizend [euro]
uitgesproken.

*Artikel 489ter :*
Met gevangenisstraf van een maand tot vijf jaar en met geldboete van honderd [euro] tot
vijfhonderd [euro] worden gestraft de in artikel 489 bedoelde personen die met bedrieglijk
opzet of met het oogmerk om te schaden :
1° een gedeelte van de activa hebben verduisterd of verborgen;
2° de boeken of bescheiden bedoeld in hoofdstuk I van de wet van 17 juli 1975 op de
boekhouding en de jaarrekening van de ondernemingen, geheel of gedeeltelijk hebben doen
verdwijnen; poging tot die wanbedrijven wordt gestraft met gevangenisstraf van een maand
tot drie jaar en met geldboete van honderd [euro] tot vijfhonderd [euro].
Zij die zich aan de wanbedrijven of poging daartoe schuldig hebben gemaakt, kunnen
bovendien worden veroordeeld tot ontzetting van rechten overeenkomstig artikel 33.

*artikel 505 :*

Met gevangenisstraf van vijftien dagen tot vijf jaar en met geldboete van zesentwintig [euro] tot honderdduizend [euro] of met een van die straffen alleen worden gestraft :

1° zij die weggenomen, verduisterde of door misdaad of wanbedrijf verkregen zaken of een gedeelte ervan helen;

2° zij die zaken bedoeld in artikel 42,3° hebben gekocht, in ruil of om niet hebben ontvangen, in bezit, bewaring of beheer hebben genomen, ofschoon zij de oorsprong ervan kennen of moesten kennen;

3° zij die de zaken, bedoeld in artikel 42,3°, omgezet of overgedragen hebben met de bedoeling de illegale herkomst ervan te verbergen of te verdoezelen of een persoon die betrokken is bij een misdrijf waaruit deze zaken voortkomen, te helpen ontkomen aan de rechtsgevolgen van zijn daden;

4° zij die de aard, oorsprong, vindplaats, vervreemding, verplaatsing of eigendom van de in artikel 42,3°, bedoelde zaken hebben verheeld of verhuld, ofschoon zij de oorsprong ervan kenden of moesten kennen.

De in 3° en 4° beoogde misdrijven blijven bestaan, ook indien ze gepleegd worden door de dader of mededader van, respectievelijk de medeplichtige aan het misdrijf waaruit de zaken bedoeld in artikel 42,3°, voorkomen.

De zaken bedoeld in 1°,2°,3° en 4° van dit artikel maken het voorwerp uit van de misdrijven die gedekt worden door deze bepalingen, in de zin van artikel 42,1°, en zij worden verbeurdverklaard, ook indien zij geen eigendom zijn van de veroordeelde, zonder dat deze verbeurdverklaring nochtans de rechten van derden op de goederen die het voorwerp kunnen uitmaken van de verbeurdverklaring, schaadt.

Poging tot een van de misdrijven bedoeld in 2°,3° en 4° van dit artikel wordt bestraft met gevangenisstraf van acht dagen tot drie jaar en met geldboete van zesentwintig [euro] tot vijftigduizend [euro] of met een van die straffen alleen.

De personen die krachtens deze bepalingen worden gestraft, kunnen bovendien veroordeeld worden tot ontzetting, overeenkomstig artikel 33.

RECHTBANK VAN EERSTE AANLEG
TE
**ANTWERPEN**
KABINET
ONDERZOEKSRECHTER
**F.CAMBERLAIN**
Notitienummer : 75.98.375/04
Mijn referentie : 2005/072
Uw referentie  :    /
Tel.   (03) 257.88.39

Antwerpen,13 september 2007

Aan Department of Justice
Office of International Affairs
Mrs.Lynn Holiday

Washington DC

USA

<u>Of elke andere bevoegde
Gerechtelijke autoriteit</u>

## AMBTELIJKE OPDRACHT

Bij vordering van de Procureur des Konings dd 28 april 2005 werd mijn ambt gelast met een onderzoek lastens :

De strafrechtelijke verantwoordelijken van
1.  GIANFRERO GROUP INTERNATIONAL NV, (GGI NV) opgericht op 29/3/2002 onder de benaming NV BRUTT, Vestingstraat 49 bus 38 te 2018 Antwerpen
2.  VALIBO INVEST NV, (voorheen BRUTT BVBA) Vestingstraat 49 bus 38 te 2018 Antwerpen
3.  UNIT SECURITIES S.A., Boulevard Joseph II, L.1840 Luxembourg (Groothertogdom Luxemburg)

hoofdens :
A.  valsheid in geschriften en gebruik van valse stukken (artikelen 193,196,197,213,214 van het Strafwetboek)
B.  inbreuken op artikel 489ter van het Strafwetboek
C.  inbreuken op artikel 505, lid 1, 2°, 3° en 4° van het Strafwetboek

Gelet op het verdrag voor Wederzijdse rechtshulp in strafzaken tussen het Koninkrijk België en de Verenigde Staten van Amerika.

A062/2007-B

<u>DE FEITEN</u>

<u>1. Historiek.</u>

Vanaf de start van BRUTT NV (later NV GIANFRERO GROUP INTERNATIONAL NV) startten SCHELLEKENS Anton (geboren te Antwerpen op 23/11/1965, wonende te Zandhoven, Bogaereweg 14), VERSTRAETE Frederik (geboren te Gent op 7/8/1972, wonende te Lokeren, Weverslaan 1) en VERMEIRSCH Ginette (geboren te Lokeren op 27/3/1960, wonende te Lokeren, Guillaume Fierensstraat 3) met de verkoop van juwelen, voornamelijk van het huismerk 'CASA GI'.

Reeds van bij de oprichting gebeurden een aantal onregelmatigheden, voornamelijk voor wat betreft de boekhoudkundige 'inbreng in natura' vanuit de BVBA BRUTT (een oudere en bestaande vennootschap van SCHELLEKENS Anton). De rol van de bedrijfsrevisor en een hogere bankbediende worden in dit verband hiermede onderzocht.

Na onenigheid tussen de bestuurders SCHELLEKENS Anton en VERSTRAETE Frederik besluiten ze elk hun eigen weg te gaan, en kort daarna gaat GIANFRERO GROUP INTERNATIONAL NV failliet. Uit het faillissementsonderzoek dat o.m. mede door een aangestelde gerechtsdeskundige werd onderzocht, blijkt o.m.:

-   De boekhoudingen waren, vermoedelijk opzettelijk, onduidelijk, onvolledig en niet waarheidsgetrouw bijgehouden.

-   De Luxemburgse SA UNIT SECURITIES (op 5/09/1994 opgericht met een kapitaal van 40.000,- US$ door PAN EUROPEAN VENTURES S.A. en INTERNATIONALE NEDERLANDEN TRUST S.A (Groothertogdom Luxemburg). – beide gevestigd op hetzelfde adres als UNIT SECUTIRTIES S.A.-) schreef in op een kapitaalsverhoging bij NV BRUTT ten waarde van 495.787,00 € in speciën op 05/06/2002. Op 22/01/2004 beslist de algemene vergadering dat UNIT SECURITIES S.A. haar ontslag indiende als bestuurder, met ingang van 20/05/2003. Reeds anderhalf jaar na de kapitaalsverhoging, wordt UNIT SECURITIES S.A. ontbonden.

-   GIANFRERO GROUP INTERNATIONAL NV doet een aanbetaling, namens RUKARIM INVEST NV, voor een onroerend goed in het diamantkwartier te Antwerpen, Vestingstraat 42.

-   RUKARIM INVEST NV werd opgericht op 21/01/2003 door Islam KATATAEV (geboren te Grozny op 11/4/1973, wonende te Frankrijk, Parijs, George Bernard Shaw Straart 3bis) en Frederik VERSTRAETE. Het maatschappelijk kapitaal (600.000,- €) werd gestort door MAVECO GRUPP (Estland). Enkele weken later wordt een bedrag van 593.312,92 € teruggestort aan MAVECO GRUPP. Deze betaling wordt door de bank gemeld als verdacht van witwas, en het geld wordt geblokkeerd in opdracht van de Belgische gerechtelijke autoriteiten. Ook KHUSSAINOV Ruslambek (geboren op 7/8/1972, verblijvende te Frankrijk, Parijs, Goerge Bernard Shawstraat 3bis) is bestuurder RUKARIM INVEST NV.

-   In een poging om GIANFRERO GROUP INTERNATIONAL NV nog te vereffenen, in plaats van het faillissement aan te vragen (wat cfr de Belgische jurisdictie had moeten gebeuren), worden 100% waardevermindering toegekend aan de juwelen die aan CASA GI US geleverd waren (ter waarde van 545.688,99 €), en zelfs 200% voor de juwelen die aan THE INDEPENDENT SOURCE geleverd werden (ter waarde van 128.819,81 €). Hieruit blijkt minstens een zekere controle vanuit GIANFRERO GROUP INTERNATIONAL NV ten opzichte van de beide Amerikaanse vennootschappen. De compensatie in de boekhouding van GIANFRERO GROUP INTERNATIONAL NV, en tussen beide Amerikaanse klanten wijst mogelijk op bindingen tussen beiden. Er zou een discussie geweest zijn over de kwaliteit van de geleverde goederen.

- Er werd onder meer een betaling aangetroffen dd. 10/07/2003 van 62.068,18 US$ in de boekhouding van GIANFRERO GROUP INTERNATIONAL NV met de vermelding :in opdracht van 2KA Ventures Inc. (de vennootschap van Ron HATFIELD, volgens VERSTRAETE).

- Uit een e-brief van CASA GI US blijk: 'I (Nvdr: Alana HATFIELD) *know for sure that Ron gave Frederik a lot of product from her and he at least took back about 150.000 to 200.000 worth of product into Belgium from America of what I know.*'

- Diezelfde 'Ron' zou aan de Amerikaanse Douane gemeld hebben dat VERSTRAETE marihuana meebracht bij zijn reizen naar de VS.

- GIANFRERO GROUP INTERNATIONAL NV richtte de BVBA naar Armeens recht JEWEL TEC of JEWEL TECH LLC in Jerevan (Armenië) op. Deze deelneming wordt echter niet vermeld in de boekhouding. Uit een factuur van BVBA L.BUYSCHAERT & CO (leverancier van machines om juwelen te produceren) van 22/01/2003 blijkt, dat deze machines, ter waarde van 168.110,- € (opgetelde afbetalingen mensualiteiten) geleverd werd aan GIANFRERO GROUP INTERNATIONAL NV. Deze machine zou 'uitgeleend' zijn aan JEWEL TECH LLC, met de bedoeling om 'goedkoper juwelen te maken voor GIANFRERO GROUP INTERNATIONAL NV.

- Er werden ook grondstoffen geleverd t.w.v. 60.421,23 €, terwijl JEWEL TECH slechts voor 8.160,- USD (=6.975,60 €) leverde. Er wordt geen huur betaald, en er is maar één levering van juwelen geweest. Karo BEGUIAN is zaakvoerder, en ontvangt een loon van 500,- € per maand. Het is niet uit te sluiten dat twee stortingen van 5.000,- US$ aan JEWEL TECH te maken hebben met de oprichting.

- Mogelijk werden een aantal juwelen ontvreemd uit het faillissement, en ondergebracht in de nieuwe vennootschap CASA GI INTERNATIONAL NV, waarin Ginette VERMEIRSCH, blijkbaar zonder VERSTRAETE en SCHELLEKENS, de juwelen van de 'Casa Gi'-lijn verkoopt. Zij maakt daarvoor gebruik van dezelfde klanten en leveranciers als GIANFRERO GROUP INTERNATIONAL NV, die dus intussen failliet is alsook van het patent (goodwill) dat zij persoonlijk ontving zonder tegenprestatie.

## VERZOEK

Met beleefd verzoek, en steeds tot wederdienst bereid, om over te gaan tot volgende onderzoeksdaden :

1. Inwinnen informatie bij de Kamer van Koophandel:

   Met verzoek het juiste adres te achterhalen van de vennootschap:
   The Independent Source, 2 Harbour Place, Portsmouth NH 03801, USA
   (SCHNEIDER P. en/of KELLY Chris)

2. Met verzoek volgende personen voorafgaand te identificeren en te lokaliseren:

   - SCHNEIDER P.;
   - KELLY Chris.

3. Gerechtelijke antecedenten:
   Met verzoek de gerechtelijke antecedenten mee te delen van de hierna vermelde personen en
   rechtspersonen, alsmede de lopende onderzoeken

   SCHELLEKENS, Anton
   Geboren te Antwerpen op 23/11/1965
   Wonende te 2240 Zandhoven, Bogaereweg 14

   VERSTRAETE Frederik
   Geboren te Gent op 07/08/1972
   Wonende te 9160 Lokeren, Weverslaan 1

   BEGUIAN, Karo
   Geboren te Yerevan (Armenië) op 23/12/1964
   Wonende te 1082 Sint-Agatha-Berchem, Katteputstraat 40/b21
   (bestuurder in GGI en JEWEL TECH LLC)

   VERMEIRSCH, Ginette
   Geboren te Lokeren op 27/03/1960
   Wonende te 9160 Lokeren, Guillaume Fierensstraat 3

   ROSSI Jacopo
   °San Donna di Piave (Italië) 20/04/1972, geen verdere gegevens gekend
   (afgevaardigd bestuurder van de Luxemburgse UNIT SECURITIES S.A.)

   KHATATAEV, Islam
   °Grozny (Rusland) op 11/04/1973
   Wonende te George Bernard Shaw straat 3bis in Parijs, Frankrijk ( van Russische Nationaliteit)

   KHUSSAINOV, Ruslambek, Abduchakhtovitch
   Geboren op 07/08/1972 (van Russische nationaliteit)
   Verblijvende op het adres van KHATATAEV Islam, wonende te Frankrijk, Parijs , George Bernard
   Shawstraat 3 bis.

   GIANFRERO GROUP INTERNATIONAL NV (GGI NV) – opgericht op 29/03/2002 onder de
   benaming NV BRUTT, Vestingstraat 49 bus 38 te 2018 Antwerpen;

   UNIT SECURITIES S.A. (Groothertogdom Luxemburg) L.1840 Luxembourg, 8, Boulevard Joseph
   II

   CASA GI INTERNATIONAL NV, Lange Herentalsestraat 62B70 te 2018 Antwerpen

   RUKARIM INVEST NV, Rijfstraat 3 te 2018 Antwerpen;

   VALIBO INVEST NV,Vestingstraat 49 bus 38 te 2018 Antwerpen (voorheen BRUTT BVBA);

   MAVECO GROUP (Estland) of TOO MAVECO GRUPP (Talin – Estland)
   SILVER MOON Company (beheerder UNIT SECURITIES S.A.), 122 Via Espana, Bank of Boston
   Building 8° verdieping,  Panama (vertegenwoordigd door S. Van Den Broeck)

   JEWEL TECH LLC Tigran Metsh, 1 Nrbantsk n° 62, Erevan 375018, Armenië.

   CASA GI US, PO BOX 810998 Boca Raton – Florida, US (Alana HATFIELD)

   2KA VENTURES INC, PO BOX 810998 Boca Raton – Florida , US (Ron HATFIELD)

CASA GI US, 551 NW 77, The Street, suite 200, Boca Raton, Florida 33487;

THE INDEPENDENT SOURCE, Two Harbour Place, Portsmouth NH 03801, USA (SCHNEIDER P. en KELLY Chris)

ACCA JEWELRY Ltd (Hongkong) (mogelijk voorheen GI GROUP Ltd)


4. <u>Verhoren:</u>
   Met verzoek over te gaan tot verhoor van:
   - SCHNEIDER P.
   - KELLY Chris.
   - De (eind)verantwoordelijke(n) van THE INDEPENDENT SOURCE, indien andere dan hierboven vermeld.


   Teneinde:
   - Te achterhalen wat hun handelsrelaties zijn met de personen en vennootschappen hierboven vermeld (punt 2).
   - Te achterhalen of er zich nog gelden en/of juwelen (stock), eigendom van de gefailleerde vennootschap GIANFRERO GROUP INTERNATIONAL NV bij deze personen of vennootschap bevinden. Conform de gerechtsdeskundige accountant zouden er na analyse van de boekhouding van GIANFRERO GROUP INTERNATIONAL NV nog aanzienlijke gelden en/of voorraden in de Verenigde Staten van Amerika moeten aanwezig zijn.
   - Deze gelden/juwelen met beslag bezwaren, teneinde voeging bij het actief van de boedel van de NV GIANFRERO GROUP INTERNATIONAL NV in faling.
   - Conform gerechtsdeskundige accountant werd onder meer bevonden dat op het tegoed van THE INDEPENDENT SOURCE een bedrag van € 128.819,31 tweemaal een waardevermindering voor het volledige bedrag geboekt. De motivatie werd hiervoor niet gegeven en terzake werden geen bewijskrachtige documenten overgemaakt.
   - Te achterhalen welke betalingen er aan wie gebeurd zijn, zo de juwelen wel degelijk aangekocht zijn.


5. <u>Controle boekhouding:</u>
   Met verzoek over te gaan tot nazicht van de boekhouding van THE INDEPENDENT SOURCE, teneinde te achterhalen:
   - welke relaties er bestonden tussen de VS-vennootschappen en de vennootschappen en de personen hierboven vermeld (punt 2)

   Tevens na te gaan:
   <u>a)</u> of er bestelbons, facturen, betalingsbewijzen, creditnota's en dergelijke kunnen aangetroffen worden van de hierboven genoemde vennootschappen (punt 2) betreffende de handel in juwelen;
   <u>b)</u> of er briefwisseling kan aangetroffen worden met de hierboven vermelde vennootschappen of personen (punt 2), die meer licht kunnen werpen op een grote hoeveelheid juwelen die zich nog bij deze US-vennootschappen zou kunnen bevinden.;
   <u>c)</u> wat de reden was van de boekhoudkundige 'waardeverminderingen' van 100%;
   <u>d)</u> of zij nog handel drijven met de nieuwe vennootschap CASA GI INTERNATIONAL NV in Antwerpen, of met één van de andere, eerder genoemde personen of vennootschappen;

e) of er bewijzen van betalingen of teruggaven van juwelen kunnen aangetroffen worden;

f) of er nog juwelen kunnen aangetroffen worden die eigendom zijn van GIANFRERO GROUP INTERNATIONAL NV (bijvoorbeeld die in concessie zijn gegeven);

Deze stukken (of kopie ervan) en goederen in beslag te nemen en over te maken.

Met verzoek de verhoren en controles boekhouding te laten verrichten in het bijzijn van:

**Paul LERMYTTE**
Hoofdinspecteur van Politie met B.S.
Federale Gerechtelijke Politie, Noordersingel 25-27, Antwerpen 2140, Afdeling Ecofin/Financiële Recherche
Tel: 0032 3 670 75 10
Fax: 0032 3 670 73 53
paul.lermytte.7303@police.be

**Dirk LAUWERS**
Hoofdinspecteur van Politie met B.S.
Federale Gerechtelijke Politie, Noordersingel 25-27, Antwerpen 2140, Afdeling Ecofin/Financiële Recherche
Tel: 0032 3 670 75 09
Fax: 0032 3 670 73 53
ecofin.fedpolantwerpen@skynet.be

Wij danken U bij voorbaat voor Uw toestemming tot rechtshulpverzoek en tot uitvoering van het gevraagde.

De praktische uitwerking van deze internationale samenwerking kan rechtstreeks met hoger genoemde politiemensen besproken worden.

Met Hoogachting,

F. CAMBERLAIN
Onderzoeksrechter

Hierbijgevoegd: uittreksel uit het Belgisch Strafwetboek

## *Toepasselijke Wetgeving*

*artikel 193 :*
Valsheid in [geschriften, in informatica of in telegrammen], met bedrieglijk opzet of met het
oogmerk om te schaden, wordt gestraft overeenkomstig de volgende artikelen.

*artikel 196 :*
Met [opsluiting van vijf jaar tot tien jaar] worden gestraft de andere personen die in
authentieke en openbare geschriften valsheid plegen en alle personen die in handels- of
bankgeschriften of in private geschriften valsheid plegen.
hetzij door valse handtekeningen;
hetzij door namaking of vervalsing van geschriften of handtekeningen;
hetzij door overeenkomsten, beschikkingen, verbintenissen of schuldbevrijdingen valselijk op
te maken of achteraf in de akten in te voegen;
hetzij door toevoeging of vervalsing van bedingen, verklaringen of feiten die deze akten ten
doel hadden op te nemen of vast te stellen.

*artikel 197 :*
In alle gevallen in deze afdeling vermeld, wordt hij die gebruik maakt van de valse akte of van
het valse stuk, gestraft alsof hij de dader van de valsheid was.

*artikel 213 :*
De toepassing van de straffen, gesteld tegen hen die gebruik maken van de munten, effecten,
rente- of dividendbewijzen, biljetten, zegels, stempels, merken, telegrammen en geschriften
welke nagemaakt, valselijk opgemaakt of vervalst zijn, heeft slechts plaats voor zover die
personen van de valse zaak gebruik maken met bedrieglijk opzet of met het oogmerk om te
schaden.

*artikel 214 :*
In de gevallen, bij de vier vorige hoofdstukken omschreven en waarvoor geen geldboete in het
bijzonder bepaald is, wordt een geldboete van zesentwintig [euro] tot tweeduizend [euro]
uitgesproken.

*Artikel 489ter :*
Met gevangenisstraf van een maand tot vijf jaar en met geldboete van honderd [euro] tot
vijfhonderd [euro] worden gestraft de in artikel 489 bedoelde personen die met bedrieglijk
opzet of met het oogmerk om te schaden :
1° een gedeelte van de activa hebben verduisterd of verborgen;
2° de boeken of bescheiden bedoeld in hoofdstuk I van de wet van 17 juli 1975 op de
boekhouding en de jaarrekening van de ondernemingen, geheel of gedeeltelijk hebben doen
verdwijnen; poging tot die wanbedrijven wordt gestraft met gevangenisstraf van een maand
tot drie jaar en met geldboete van honderd [euro] tot vijfhonderd [euro].
Zij die zich aan de wanbedrijven of poging daartoe schuldig hebben gemaakt, kunnen
bovendien worden veroordeeld tot ontzetting van rechten overeenkomstig artikel 33.

*artikel 505 :*

Met gevangenisstraf van vijftien dagen tot vijf jaar en met geldboete van zesentwintig [euro] tot honderdduizend [euro] of met een van die straffen alleen worden gestraft :

1° zij die weggenomen, verduisterde of door misdaad of wanbedrijf verkregen zaken of een gedeelte ervan helen;

2° zij die zaken bedoeld in artikel 42,3° hebben gekocht, in ruil of om niet hebben ontvangen, in bezit, bewaring of beheer hebben genomen, ofschoon zij de oorsprong ervan kennen of moesten kennen;

3° zij die de zaken, bedoeld in artikel 42,3°, omgezet of overgedragen hebben met de bedoeling de illegale herkomst ervan te verbergen of te verdoezelen of een persoon die betrokken is bij een misdrijf waaruit deze zaken voortkomen, te helpen ontkomen aan de rechtsgevolgen van zijn daden;

4° zij die de aard, oorsprong, vindplaats, vervreemding, verplaatsing of eigendom van de in artikel 42,3°, bedoelde zaken hebben verheeld of verhuld, ofschoon zij de oorsprong ervan kenden of moesten kennen.

De in 3° en 4° beoogde misdrijven blijven bestaan, ook indien ze gepleegd worden door de dader of mededader van, respectievelijk de medeplichtige aan het misdrijf waaruit de zaken bedoeld in artikel 42,3°, voorkomen.

De zaken bedoeld in 1°,2°,3° en 4° van dit artikel maken het voorwerp uit van de misdrijven die gedekt worden door deze bepalingen, in de zin van artikel 42,1°, en zij worden verbeurd-verklaard, ook indien zij geen eigendom zijn van de veroordeelde, zonder dat deze verbeurd-verklaring nochtans de rechten van derden op de goederen die het voorwerp kunnen uitmaken van de verbeurdverklaring, schaadt.

Poging tot een van de misdrijven bedoeld in 2°,3° en 4° van dit artikel wordt bestraft met gevangenisstraf van acht dagen tot drie jaar en met geldboete van zesentwintig [euro] tot vijftigduizend [euro] of met een van die straffen alleen.

De personen die krachtens deze bepalingen worden gestraft, kunnen bovendien veroordeeld worden tot ontzetting, overeenkomstig artikel 33.